UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:09CV-00063-JHM**

**KEVIN TODD**                                                                                        **PLAINTIFF**

**VS.**

**UNILEVER UNITED STATES, INC.**                                       **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on cross motions for summary judgment by Plaintiff, Kevin Todd, *pro se*,[DN 49] and Defendant, Unilever United States, Inc. [DN 48]. Fully briefed, these matters are ripe for decision. For the reasons set forth below, the motion for summary judgment by Plaintiff is denied and the motion for summary judgment by Defendant is granted.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine

factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II.  BACKGROUND

Plaintiff, Kevin Todd, was employed by Defendant, Unilever United States, as an hourly production worker at its Owensboro plant from August 6, 2006, to October 24, 2007. Plaintiff received Defendant's EEO, Non-Discrimination and Anti-Harassment Policy upon employment with the company. Defendant's Anti-Harassment Policy directs employees to immediately report harassment to their immediate supervisor, their department head, their human resources representative, the Senior Vice President of Human Resources, the Legal Department, or the ethics hotline. (Non-Discrimination and Anti-Harassment Policy at 4.) As a new hire, Defendant placed Plaintiff on probation for a period of three months. On November 8, 2006, Plaintiff's team leader, Mike Velotta, extended Plaintiff's probation because he failed to meet expectations during the initial probationary period. On January 22, 2007, Defendant transferred Plaintiff to another production line which Plaintiff testified that he welcomed. On February 14, 2007, Defendant removed Plaintiff's probation.

On March 5, 2007, Plaintiff talked with Human Resource Manager, Mark Maddox. Plaintiff communicated with Maddox that he was happy in his new role with Defendant and that he had been attending classes about getting along with people. Plaintiff informed Maddox that his mental health

therapist had suggested he talk with Maddox about the fact that a co-employee Chastity Cox had brushed up against him "accidentally" on two occasions. Plaintiff stated that he was not vindictive toward Cox. Plaintiff testified that Cox's conduct stopped when Plaintiff was moved to another production line away from Cox two months earlier.[1]

On April 22, 2007, Plaintiff bid for and received a new position as an Ingredient Handler with Defendant at a higher hourly rate of pay. As an Ingredient Handler, Plaintiff performed various duties, including mixing ingredients and placing them into large cooking kettles as part of Defendant's sauce production process. As part of his job, Plaintiff often used a face mask while mixing the ingredients. When he wasn't using the dust mask, he would place it on the top of his cap.

On October 12, 2007, an incident occurred which led Defendant to terminate Plaintiff's employment. A dust mask dropped into a kettle and was found during Plaintiff's shift. The incident involved contaminated product and presented a serious food safety issue. Defendant began an investigation to determine the employee who dropped the dust mask into the kettle and why it had not been promptly retrieved to avoid contamination. A co-worker, Tim Arnold, reported to company officials that he saw Plaintiff retrieve a dust mask from an office cabinet between 9:00 p.m. and 9:15 p.m. Plaintiff had arrived at the plant prior to his shift and had clocked in at 9:16 p.m. that evening. Another co-worker, John Weidemann, reported to company officials that he saw Plaintiff with a mask on top of his hard hat at approximately 9:45 p.m. Plaintiff admits that he was the only employee in the area who used a dust mask that evening. When questioned, Plaintiff stated that he retrieved a dust mask around 10:30 p.m. when he was dumping ingredients, including garlic, into

---

[1] In his deposition, Plaintiff also testified that he believes that he spoke to his team leader, Mike Velotta, about seeing Cox's "butt crack," but admitted that he did not inform Velotta about Cox allegedly brushing up against Plaintiff on two occasions. (Todd Dep. at 23-24.)

3

the open kettle. Plaintiff denied having a dust mask prior to that time and losing it. Human Resource Manager, Mark Maddox, testified that because two witnesses reported that Plaintiff had a mask earlier in the shift, Defendant officials reasonably concluded that Plaintiff must have been retrieving his second dust mask at 10:30 p.m., and he likely dropped the first one in the kettle. (Maddox Aff. at ¶ 8.) Based on its investigation, Defendant determined that Plaintiff had not been honest about having two masks that evening. On October 24, 2007, Defendant terminated Plaintiff's employment indicating reason for the action as "Material Misrepresentation of Facts," a Group I offense. (Todd Dep. at 71, Ex. 18.)

As a result of his termination, Plaintiff filed this action against Defendant asserting claims of sexual harassment and retaliation under Title VII, 42 U.S.C. § 2000e. Specifically, Plaintiff claims that a female co-worker sexually harassed him by brushing against him on two occasions and that he saw her "butt crack" two or three times when she bent over to perform work tasks. Plaintiff further alleges that Defendant terminated him in retaliation for a conversation he had with Human Resource Director, Mark Maddox, about the female co-worker. Defendant filed this motion for summary judgment arguing that (1) Plaintiff's Title VII sexual harassment claim is time-barred and (2) Plaintiff failed to establish a prima facie case or a pretext in her retaliation claim. The Court considers these arguments in turn.

### III. DISCUSSION

#### A. Sexual Harassment Claim

Under 42 U.S.C. § 2000e-5(e)(1) of Title VII of the Civil Rights Act of 1964, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. Otherwise, a claim for the alleged act is time barred. See National R.R. Passenger Corp.

v. Morgan, 536 U.S. 101, 114-115 (2002); Amini v. Oberlin College, 259 F.3d 493, 498 (6th Cir. 2001); Algie v. Northern Ky. Univ., 2007 WL 2137781 (E.D. Ky. July 23, 2007); Fuertes v. Ford Motor Co., 2009 WL 395452, *5 (W.D. Ky. Feb. 17, 2009). The alleged harassment against Plaintiff ended in January of 2007. (Todd Dep. at 15.) However, Plaintiff did not file his EEOC administrative claim until April 18, 2008. (Todd Charge of Discrimination at 1.) Therefore, Plaintiff's sexual harassment claim falls outside the limitations period set forth in § 2000e-5(e)(1) and therefore is time-barred.

### B. Retaliation Claim

To make out a claim of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Scott v. Metropolitan Health Corp., 234 Fed. Appx. 341, 346 (6th Cir. 2007); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000). If and when a plaintiff has established a prima facie case, the burden of production once again shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer carries that burden, the plaintiff bears the burden of demonstrating that the employer's reason is pretextual. Blair v. Henry Filters, Inc., 505 F.3d 517, 524 (6th Cir. 2007). Defendant maintains that Plaintiff has not raised a genuine issue of material fact as to his prima facie case or as to pretext.

#### 1. Prima Facie Case

Defendant argues that the Plaintiff has offered no evidence of a causal connection between the alleged protected activity and Defendant's decision to terminate Plaintiff. Additionally,

Defendant argues that Plaintiff did not engage in protected activity because the conduct he complained about did not rise to the level of a severely or pervasively sexually hostile work environment.

To establish a causal connection, the plaintiff must "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." E.E.O.C. v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir.1997)(citation omitted). "In determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals and whether there is a temporal connection between the protected activity and the retaliatory action." Barrett v. Whirlpool Corp., 556 F.3d 502, 516–517 (6th Cir. 2009). While it is true that temporal proximity alone is usually insufficient to establish a causal connection for a retaliation claim, the causal connection element is satisfied "where the adverse employment action occurred within a matter of months, or less, of the protected activity." Dixon v. Gonzales, 481 F.3d 324, 334 (6th Cir. 2007).  See also Goller v. Ohio Dept. of Rehabilitation and Correction, 285 Fed. Appx. 250, 257 (6th Cir. 2008); Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 563 (6th Cir. 2004)(three-month period between the protected activity and employee's termination is sufficient to create a causal connection for the purposes of establishing a prima facie case).  However, "where some time has elapsed between when the employer learns of the protected activity and the adverse employment action, the employee must produce other evidence, in addition to the temporal proximity, in order to establish causation." Leidner v. Napolitano, 2010 WL 5300533, *22 (E.D. Ky. Nov. 23, 2010)(citing Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 525 (6th Cir. 2008)).

Plaintiff's termination seven and a half months after his conversation with Maddox cannot

6

support an inference of causation via temporal proximity. The termination did not occur close in time to Plaintiff's discussion with Maddox regarding the alleged harassment. See Frankenberg v. Potter, 2009 WL 773502 (W.D. Ky. March 23, 2009). Plaintiff also fails to produce any other evidence to establish causation. In fact, during the seven and a half months between Plaintiff's conversation with Maddox and his termination, Plaintiff bid for and received a new position with the company at a higher hourly rate of pay. Additionally, the record reflects that Plaintiff's supervisor, Mr. Long, was both a decision-maker in Plaintiff's earlier promotion and in his termination. (Maddox Aff. at ¶ 13.) The Court *may* "infer a lack of discrimination from the fact that the same individual both hired and fired the employee." Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 463 (6th Cir.1995)(The Sixth Circuit recognized the "same-actor" inference, "which allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee."); Schmidt v. American Retail Corp., 2010 WL 5093094, *12 (E.D. Ky. Dec. 7, 2010).

      In an effort to establish causation, Plaintiff in his reply submits a 1999 Notice of Violation of a female employee who was charged with a Group I offense like Plaintiff, but was suspended instead of discharged. In as much as Plaintiff is attempting to argue that he and the female employee are similarly situated, the Court rejects the argument. To be deemed "similarly situated," the Sixth Circuit in Mitchell v. Toledo Hosp. stated that "the individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir.1992). Plaintiff has offered no evidence to

suggest that he and the female employee were similar in all relevant aspects. Knox v. Neaton Auto Prods. Mfg. Inc., 375 F.3d 451, 458 (6th Cir. 2004). In fact, the record does not even reflect the department the female employee worked, the supervisor for whom she worked, the nature of her infraction, and the management personnel who participated in the disciplinary decision.

Accordingly, the Court finds that Plaintiff has not stated a prima facie case of retaliation because no jury could reasonably conclude that his conversation with Maddox in March of 2007 caused his termination in October of 2007.

### 2. Pretext

Defendant argues that even if Plaintiff has established a prima facie case of retaliation, Defendant has offered a legitimate reason for Plaintiff's termination– e.g., Plaintiff committed a Group I offense of "material misrepresentation of facts concerning any matter affecting employment" when he dropped a dust mask into a kettle, concealed the incident, and then denied having dropped the dust mask into the kettle when question by his supervisor. Defendant contends that Plaintiff has failed to show that this reason is a pretext "designed to mask" unlawful retaliation or discrimination. Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 544 (6th Cir. 2008). The Court agrees.

To establish pretext, a plaintiff must show that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to motivate that action. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds, Geiger v. Tower Automotive, 579 F.3d 614 (6th Cir. 2009)). In an effort to establish pretext, Plaintiff argues that Defendant violated its own policies in terminating him; that res judicata and/or collateral estoppel prevents Defendant from arguing that Plaintiff was terminated

8

for cause because the Kentucky Unemployment Insurance Commission granted Plaintiff's claim for unemployment benefits; and that Defendant falsely accused Plaintiff of misconduct resulting in his discharge. Specifically, Plaintiff maintains that contrary to the witnesses statements, he did not have a dust mask at the beginning of the shift and did not drop a dust mask into the kettle. He argues that Kitchen 3 at the plant was running product for Walmart, dust masks were available to anyone, and a dust mask could have fallen in the product on any of the four shifts that day. According to Plaintiff, he was the only employee singled out and accused by Defendant of dropping a dust mask in the product. Plaintiff complains that Defendant relied on the false statements of two witnesses to support his discharge, instead of Plaintiff's statement.

First, contrary to Plaintiff's argument, Defendant's plant discipline policy provides that a Group I offense may be grounds for immediate discharge on the first offense. The policy further provides that "Examples of Group I violations follow: . . . Material misrepresentation of facts concerning any matter affecting employment." (Unilever's Plant Discipline Policy at 2.) As demonstrated in Plaintiff's Notice of Violation, Defendant terminated Plaintiff for a Group I offense which was grounds for immediate discharge under the policy. Therefore, Defendant complied with its written policies in terminating Plaintiff.

Second, the Court rejects Plaintiff's argument with respect to the preclusive effect of the Kentucky Unemployment Insurance Commission's award of unemployment benefits. Both Kentucky state and federal courts have held that a Kentucky Unemployment Insurance Commission's decision awarding a plaintiff unemployment benefits does not "have issue-preclusive effect upon Title VII claims." Hicks v. Floyd County Board of Education, 99 Fed. Appx. 603, 604 (6th Cir. 2004) (citing University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986)); KRS §

9

341.420(5). See also Harmon v. Paintsville Hosp. Co., 2011 WL 4900019, *2 (E.D. Ky. Oct. 14, 2011); Peterman v. Kentucky Unemployment Ins. Com'n, 2011 WL 112743, *3 (Ky. Ct. App. 2011); Berrier v. Bizer, 57 S.W.3d 271, 281 (Ky. 2001); KRS § 341.420(5). Specifically, KRS § 341.420(5) provides that "[n]o finding of fact or law, judgment, conclusion, or final order made with respect to a claim for unemployment compensation under this chapter may be conclusive or binding in any separate or subsequent action or proceeding in another forum, except proceedings under this chapter, regardless of whether the prior action was between the same or related parties or involved the same facts." Therefore, Plaintiff cannot rely on the unemployment compensation decision to establish a claim for retaliation or discrimination.

Third, Plaintiff fails to set forth any evidence suggesting that the reason articulated by Defendant for its decision to terminate him was a pretext for retaliation. "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" Byers v. Midwest Terminal, Inc., 2010 WL 3259734, *8 (W.D. Ky. Aug. 17, 2010)(quoting Chen v. Dow Chem. Co., 580 F.3d 394, 401 (6th Cir. 2009)). In the present case, Defendant has pointed to specific facts that it had at the time the decision was made to terminate Plaintiff which would justify management's belief in the proffered non-discriminatory reason. In fact, Plaintiff testified in his deposition that non-food items dropped by employees while working above the open kettles could contaminate food product and the employee was responsible for retrieving items dropped into the kettles. (Todd Dep. at 64.) Plaintiff admitted the incident in question involved contaminated food product and presented a serious food safety issue. He also acknowledges that he was the only individual during the shift that used a dust mask. Plaintiff also

10

does not dispute that Defendant relied on two witnesses who informed management that they saw Plaintiff with a dust mask at the beginning of his shift. Plaintiff further acknowledges no prior issues with the two witnesses. When questioned by management, Plaintiff admitted that he retrieved a dust mask at 10:30 p.m., but denied having a dust mask prior to that time. These facts support Defendant's non-discriminatory reason for Plaintiff's termination.

Plaintiff's disagreement with Defendant's decision and his subjective belief that he did not drop the dust mask into the product are insufficient to show pretext. It is not enough to simply show that the employer's decision was wrong or mistaken. See Boze v. General Elec. Co., 2009 WL 2485394, *9 (W.D. Ky. Aug. 11, 2009). The issue before the Court is whether the employer's decision was an illegally discriminatory one, not whether the employer made the best decision to discipline or terminate a plaintiff, or even whether the employer's decision was reasonable. Stein v. National City Bank, 942 F.2d 1062, 1065 (6th Cir.1991) ("It is not the function of courts to judge the wisdom of particular business policies . . ."); McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir.1990). Thus, without more, Plaintiff's argument that Defendant lacked cause to terminate him is legally insufficient to show that Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff's employment was a pretext for retaliation. See generally, Manzer, 29 F.3d at 1084 ("'just cause' arguments . . . must not be allowed to creep into an employment discrimination lawsuit.").

For these reasons, the Court finds that the Plaintiff has failed to come forward with sufficient evidence to establish pretext, and therefore summary judgment is appropriate.

### IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary

11

judgment by Plaintiff, Kevin Todd, *pro se*,[DN 49] is **DENIED** and the motion for summary judgment by Defendant, Unilever United States, Inc. [DN 48] is **GRANTED**. A Judgment will be entered consistent with this Opinion.



cc: Kevin Todd, *pro se*
    counsel of record